# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

VINCENT LAUDERDALE,

       Plaintiff,                     :         Case No. 3:09-cv-108

                                    District Judge Walter Herbert Rice
    -vs-                               Magistrate Judge Michael R. Merz

                                    :

YELLOW TRANSPORTATION,
 INC., et al.,

       Defendants.

## REPORT AND RECOMMENDATIONS

This case is before the Court on Plaintiff's Motion to Remand (Doc. No. 14) which Defendants oppose (Doc. No. 15) and as to which Plaintiff has filed a Reply Memorandum in Support (Doc. No. 16). Motions to remand are classified as "dispositive" by case law, thus requiring a recommended disposition when initially considered by a magistrate judge.

The case was initially filed in the Montgomery County Common Pleas Court and removed to this Court on March 17, 2009. Although the Motion to Remand was not filed until September 21, 2009, it is timely under 28 U.S.C. § 1447(c) because it attacks the subject matter jurisdiction of this Court over the claims in the Complaint.

In their Notice of Removal, Defendants asserted this Court has subject matter jurisdiction because the claims stated in Counts IV, V, and VI of the Complaint, though pled in state law terms, are completely preempted by § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185. Defendants further asserted that the remaining claims in the Complaint were part of the same case or controversy as the three preempted claims and thus the Court had supplemental subject matter

1

jurisdiction under 28 U.S.C. § 1367. (Notice of Removal, Doc. No. 1, at 2-3.) In opposing remand, Defendants assert Count VIII, intentional infliction of emotional distress, is also preempted. (Memo in Opp., Doc. No. 15, at 8-9). Plaintiff asserts this Count VIII preemption claim is waived by not being made in the Notice of Removal. (Reply Memo, Doc. No. 16, at 3.)

**Analysis**

**1.     Pre-Emption**

Defendants assert that this Court has subject matter jurisdiction under 28 U.S.C. § 1331 because at least some of the claims in the Complaint arise under federal law. The district courts have jurisdiction under § 1331 to hear "only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27-28. (1983). In other words, the question whether a claim arises under federal law is ordinarily determined according to the "well-pleaded complaint" rule. *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 808 (1986).

However, the need to impose a uniform federal law may be so compelling that federal law is held to preempted state law which might otherwise govern a set of facts. The classic situation involves employment contracts in union shops governed by collective bargaining agreements. The Supreme Court has held that

> the pre-emptive force of §301 [of the LMRA] is so powerful as to displace entirely any state cause of action "for violation of contracts between an employer and a labor organization." Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of §301.

*Franchise Tax Bd.,* 463 U.S. at 23 (1983)(footnote omitted), *quoting,* 29 U.S.C. §185(a). The broad preemptive force of §301 has been understood to extend to all contract claims based on an alleged breach of a collective bargaining agreement. *See, Int'l Brotherhood of Electrical Workers v. Hechler,* 481 U.S. 851 (1987).

In *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399 (1989), the Court stated the governing principle for §301 preemption cases:

> if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is preempted and federal labor-law principles—necessarily uniform throughout the nation—must be employed to resolve the dispute.

*Id*. at 405-406

In *DeCoe v. General Motors Corp.,* 32 F.3d 212 (6th Cir. 1994), the Sixth Circuit detailed a two-step approach to deciding whether §301 preemption applies:

> First, the district court must examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms. Second, the court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law. If the right is born of state law and does not invoke contract interpretation, then there is no preemption. However, if neither or only one criterion is satisfied, section 301 preemption is warranted.

*Id*. at 216.

The Complaint alleges in twenty-four introductory paragraphs the following relevant facts: Plaintiff, a male African-American, was a truck driver for Yellow Transportation ("YRC") and Defendant Scott Sandman was a manager for YRC. (Complaint at ¶¶ 1, 3, 7.) Plaintiff has been subjected to a racially hostile environment at YRC. *Id*. at ¶¶ 9, 13. Plaintiff has been denied an automatic transmission accommodation to his degenerative joint disease. *Id*. at ¶ 10. Plaintiff has

3

been subjected to a racially disparate incidence of drug testing at work. *Id*. at ¶ 12. On October 22, 2008, Defendant Sandman struck Plaintiff with his fists and hand. *Id*. at ¶ 14. YRC demoted Plaintiff and diverted freight around him. *Id*. at ¶ 18.

Having set forth these factual allegations, Plaintiff incorporates all of them in Count I, a claim for handicap discrimination under Ohio Revised Code Ch. 4112. *Id*. at ¶¶ 25-34. He then incorporates all the factual allegations plus ¶¶ 25-34 in Count II, a claim for race discrimination under Ohio Revised Code § 4112.99. *Id*. at ¶¶ 35-39. Paragraphs 1-39 are incorporated in Count III, a common law claim for assault and battery against Scott Sandman, referred to as Plaintiff's supervisor. *Id*. at ¶¶ 40-44. Count IV again incorporates all prior paragraphs and seeks to hold YRC liable for negligent retention and supervision of Sandman. Count V incorporates ¶¶ 1-48 and avers that YRC's failure to supervise Sandman and others "was a result of deliberate indifference to a pattern of unlawful and/or unconstitutional acts committed by Defendant Scott Sandman and others."[1]

Count VI asserts YRC negligently supervised Sandman and negligently failed to warn others, including Plaintiff, of his dangerous propensities. *Id*. at ¶¶ 53-57. Count VII, without reciting any particular basis in state or federal law, asserts YRC retaliated against him for complaining about handicap and race discrimination and physical and psychological abuse. *Id*. at ¶¶ 58-61. In Count VIII, Plaintiff pleads all Defendants negligently or intentionally inflicted emotional distress on him. *Id*. at ¶¶ 62-69. Count IX asserts respondeat superior and/or ratification liability against YRC; Count X claims all acts of all Defendants were done with sufficient mens rea to justify punitive

---

[1] Paragraph 51 reads as if it were an allegation of a violation of 42 U.S.C. § 1983 against a municipality under *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690 (1978). If this were what Plaintiff intended, then Count V would plainly arise under federal law and this Court would have subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343. However, there is no allegation in the Complaint that YRC is somehow a "state actor" within the meaning of the Fourteenth Amendment.

damages and attorney fees. Each of Counts VI through X incorporates all prior allegations.

There is apparently no dispute among the parties that Mr. Lauderdale is represented by the International Brotherhood of Teamsters in his employment with YRC and that that employment is subject to a collective bargaining agreement. One of Plaintiff's claims is that YRC has diverted freight from him, but the assignment of work is clearly governed by the collective bargaining agreement (Portions of the CBA are attached to Doc. No. 15; the requirement to assign work on the basis of seniority is governed by Art. 43, §§ 1 and 2.) To determine whether work was improperly diverted from Plaintiff, the Court will have to interpret the collective bargaining agreement's provisions on work assignment.

Plaintiff also complains of a high incidence of drug testing imposed on African-American workers at YRC and particularly on himself. The collective bargaining agreement provides that such testing is to be done on a random basis. To evaluate whether the incidence is "high" for African-Americans or "higher" for them than for others, the Court will need to consider and interpret the collective bargaining agreement obligation that "all employees subject to testing will have an equal chance to be randomly selected." (Art. 35, § 3(B).)

Finally, as YRC points out, the collective bargaining agreement prohibits assignment of employees to work in dangerous conditions, a contract term relevant to Plaintiff's claim that YRC subjected him to the dangerous condition of working in proximity with or under the supervision of Defendant Sandman.

With respect to these three claims – racially discriminatory assignment of work, racially discriminatory selection for drug testing, and subjection to working under Sandman's supervision – the Court will need to interpret the collective bargaining agreement to decide the claims. They are thus preempted under the analysis in *DeCoe*, *supra*. Of course, with respect to the claim of a right to non-discriminatory work assignments, the underlying right to be assigned any work at all is

5

created by the collective bargaining agreement; persons not covered by the collective bargaining agreement have no legal right to any work at YRC, whether or not discriminatorily assigned.

Plaintiff also asserts a claim of intentional infliction of emotional distress against YRC. (Complaint, Count VIII.) The acts and omissions of YRC which are said to constitute intentional infliction of emotional distress are all those acts and omissions alleged in ¶¶ 1-61 of the Complaint. *Id*. at ¶¶ 62-69. To prevail on a claim of intentional infliction of emotional distress, a plaintiff must prove 1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous, that it went beyond all possible bounds of decency and that it can be considered utterly intolerable in a civilized community; 3) that the actor's actions were the proximate cause of the plaintiff's psychic injury; and 4) that the mental anguish suffered by the plaintiff is serious and of a nature that no reasonable person can be expected to endure it. *Miller v. Currie*, 50 F.3d 373 (6th Cir. 1995); *Pyle v. Pyle,* 11 Ohio App. 3d 31, 34, 463 N.E.2d 98, 103 (Cuyahoga Cty. 1983) (citation omitted); *Bellios v. Victor Balata Belting Co*., 724 F. Supp. 514, 520 (S.D. Ohio 1989). The Sixth Circuit has held that such claims, made in the context of employment under a collective bargaining agreement are preempted. *DeCoe, supra; Mattis v. Massman,* 355 F.3d 902, 905 (6th Cir. 2004).

Plaintiff's assertion that Defendants waived the privilege of relying on preemption of this claim by not mentioning Count VIII in the Notice of Removal is not supported by any citation of authority. Defendants seeking to remove to federal court must act within thirty days of receiving the complaint and must do so in unison. Provided they have a good faith basis for asserting federal jurisdiction in the first instance, there is no sound policy reason to forbid them to expand that basis on further consideration.

## 2. Supplemental Jurisdiction:

Plaintiff asserts that even if the Court retains jurisdiction over Counts IV, V, and VI, it does not have supplemental jurisdiction over the remaining claims because they "do not arise out of the same nucleus of operative facts" as Counts IV, V, and VI.

The "common nucleus of operative facts" test was created by the Supreme Court to govern court-created pendent jurisdiction. See *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). That court-created doctrine was superseded by the adoption of supplemental jurisdiction in 28 U.S.C. § 1367 which allows the federal courts to exercise that jurisdiction over all claims which are part of the same "case or controversy" as the claims otherwise within federal court jurisdiction. The language chosen was deliberately as broad as that permitted by the Case or Controversy Clause of Article II(I of the Constitution in order to avoid satellite litigation over the "common nucleus" question. See Commentary by David Siegel, following § 1367 in United States Code Annotated.

Here, all the claims made against Defendants are plainly part of the same case or controversy. Indeed, Plaintiff has incorporated all of his factual allegations against Defendants into each of his claims for relief. All of the claims arise out of Plaintiff's employment relationship with the Defendants and there are not even any tag-along parties added because of their involvement with only one of the claims. While the Court could probably sever Counts I, II, III, VII, IX, and X and remand them to the state courts, it is under no compulsion to do so and doing so would ill serve judicial economy, since many of the same facts must be developed to litigate the state and federal claims.

**Conclusion**

Because this Court has federal question jurisdiction over Counts IV, V, VI, and VIII under the complete preemption doctrine and supplemental jurisdiction over the remaining Counts, Plaintiff's Motion to Remand should be denied.

October 20, 2009.

s/ **Michael R. Merz**
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).