IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

VINCENT LAUDERDALE :

    Plaintiff, :

                                  Case No. 3:09cv108

    vs. :
                                  JUDGE WALTER HERBERT RICE

YELLOW TRANSPORTATION, :
INC., ET AL.,
                                :

    Defendants.

---

DECISION AND ENTRY ADOPTING, IN PART, AND REJECTING, IN PART, MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS (DOC. #17); OVERRULING, IN PART, AND SUSTAINING, IN PART, PLAINTIFF'S OBJECTIONS THERETO (DOC. #19); AND OVERRULING, IN PART, AND SUSTAINING, IN PART, PLAINTIFF'S MOTION TO REMAND (DOC. #14)

---

The Plaintiff, Vincent Lauderdale, initially filed the present Complaint in the Montgomery County Common Pleas Court, against his employer, Defendant Yellow Transportation, Inc./YRC Worldwide, Inc. ("YRC"), and Scott Sandman, a YRC manager and agent. Doc. #1 (Not. of Rem.); Doc. #4 (Compl.). The Complaint purported to set forth only state law claims against the Defendants. Doc. #4. The Defendants removed the case to this Court on March 17, 2009, asserting that this Court had jurisdiction over the claims, in part, because certain of the state law claims were completely preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and, in part, because the Court may exercise

supplemental jurisdiction over the remaining state law claims. Doc. #1.

The Plaintiff has now moved to remand the case, as to all or part of the claims, arguing that the Court lacks subject matter jurisdiction over all of the claims. Doc. #14.  The Magistrate Judge has issued a Report and Recommendations, concluding that the resolution of certain of the Plaintiff's claims requires interpretation of the collective bargaining and is, thus, preempted by § 301 of the LMRA and, further, that all of the claims are part of the same case or controversy and that judicial economy would be well-served to retain supplemental jurisdiction over the remaining state law claims. Doc. #17.  The Plaintiff has filed objections to the same. Doc. #19.

The Court will begin by summarizing its standard of review of the Magistrate Judge's Report and Recommendations.  It will then turn to the merits of the Motion that is presently before it.


I.      Standard of Review of Magistrate Judge's Report and Recommendations

The Plaintiff's Motion to Remand is a dispositive motion. Vogel v. United States Office Prods. Co., 258 F.3d 509, 517 (6th Cir. 2001) (concluding that remand motions are dispositive, given that "[t]he practical effect of remand orders and orders to dismiss can be the same; in both, cases are permitted to proceed in state rather than federal court").  Therefore, pursuant to 28 U.S.C. § 636(b)(1), this Court must conduct a *de novo* review of the Magistrate Judge's Report and

Recommendations. United States v. Curtis, 237 F.3d 598, 603 (6th Cir. 2001) (noting that district courts must conduct a *de novo* review of dispositive motions, while the clearly erroneous standard of review is applicable to non-dispositive motions).

II.     Analysis of Motion to Remand

   A.     Pertinent Provisions in Complaint

At the onset, the Court notes that the claims in the Plaintiff's Complaint, all of which purport to be based on state law, can be grouped into three categories, to wit:

   (1)     claims based on discriminatory conduct ("discrimination claims") (i.e., failure to accommodate (Count I); race discrimination (Count II); and retaliation (Count VII)[1]);

   (2)     claims related to alleged assault and battery by Sandman ("assault/battery claims") (i.e., assault/battery (Count III); negligent retention of Sandman (Count IV); failure to properly supervise[2] (Count V); negligence, with regard to Sandman

---

[1]The retaliation claim in the Complaint could be read broadly enough to include allegations of retaliatory conduct for complaining about the Sandman assault and battery incident, but the Plaintiff clarifies in his Memorandum in Support of his Motion to Remand that the retaliation claim is not related to the Sandman incident. Doc. #4 ¶ 59; Doc. #14 at 6.  Furthermore, the Court knows of no law, state or federal, that protects employees against retaliation for complaining about an assault or battery.

[2]The Complaint is phrased fairly broadly, with regard to the negligent supervision claim, given that it alleges that YRC wrongfully supervised "Defendant Scott Sandman and others." Doc. #4 ¶¶ 50, 51.  However, the Plaintiff's Memorandum in Support of his Motion to Remand clarifies that the failure to

>   (Count VI); and respondeat superior/ratification as a means for
>   holding YRC liable for Sandman's conduct (Count IX)); and
>
> (3) intentional/negligent infliction of emotional distress ("infliction
>   of emotional distress claim"), with regard to the "acts and
>   omissions as described in this Complaint" (Count VIII).

Doc. #4.[3] Further, the Complaint alleges, with regard to the negligence claim, that YRC was aware of Sandman's propensity for harmful conduct, yet failed to warn Lauderdale of the dangers of working with him and also failed to investigate the details of the alleged assault/battery incident between Lauderdale and Sandman. Id. ¶¶ 54-55.

The Court also notes the following pertinent factual allegations, as set forth in the Complaint:

> 11. Similarly situated white employees routinely were granted special delivery routes to enhance their pay and overtime pay and were held to a disparate drug screening standard [compared to the] Plaintiff. Lucrative routes were taken away from Plaintiff and given to white employees, who[m] the Defendant preferred.
>
> 12. After Plaintiff began complaining about this disparate treatment[,] his truck routes were varied to give such lucrative routes to white drivers and taken away from him, along with being harassed with abnormally high incidences of drug testing as opposed to white drivers, even though he has never tested positive in any drug screening previously.
>
> 16. YRC, Inc. is fraught with racism wherein certain managers will

---

supervise claim is specific to Sandman. Doc. #14 at 5.

[3]The Complaint also purports to set forth an additional claim for "entitlement to punitive damages," which the Court will not consider as a separate claim, since it relates only to damages. Doc. #4 at 9.

4

> not speak with black workers but instead will ignore them and then assign them to dirty and dangerous jobs. . . .
>
> 18. There were no legitimate business or performance reasons for Plaintiff's demotion and diverting freight around Plaintiff, and his subsequent loss of pay and overtime, or the abnormally high incidences of drug screenings given to Plaintiff.

Id. ¶¶ 11, 12, 16, 18.  Also, there is no dispute among the parties that Lauderdale is represented by the International Brotherhood of Teamsters and that his employment is subject to a collective bargaining agreement.


    B.    <u>Legal Analysis of Federal Preemption Question</u>[4]

In his Report and Recommendations, the Magistrate Judge properly notes that federal law is held to preempt state law, in certain situations involving collective bargaining agreements.  Specifically, the Supreme Court has noted that § 301 of the LMRA preempts state law claims "arising from a breach of a collective bargaining agreement." <u>Smolarek v. Chrysler Corp.</u>, 879 F.2d 1326, 1329 (6th Cir. 1989) (citing <u>Textile Workers Union v. Lincoln Mills of Alabama</u>, 353 U.S. 448, 1 L. Ed. 2d 972, 77 S. Ct. 912 (1957); <u>Local 174, Teamsters v. Lucas Flour Co.</u>, 369 U.S. 95, 7 L. Ed. 2d 593, 82 S. Ct. 571 (1962); <u>Allis-Chalmers Corp. v. Lueck</u>, 471 U.S. 202, 85 L. Ed. 2d 206, 105 S. Ct. 1904

---

[4]The Plaintiff attempts to argue that this Court is foreclosed from considering the federal preemption question, as to any claims except those upon which the Defendants relied in removing the case to this Court. Doc. #16 at 3. This argument is without legal foundation, however.

(1985); Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 108 S. Ct. 1877, 100 L. Ed. 2d 410 (1988)).  In order for a tort claim relating to employment to survive preemption under § 301, the claim must be "independent" of the collective bargaining agreement. Mattis v. Massman, 355 F.3d 902, 905 (6th Cir. 2004) (citing, among others, Lingle, 486 U.S. at 409-10).

> To determine whether a state-law claim is sufficiently "independent" to survive § 301 preemption, this court has adopted a two-step inquiry.  First, courts must determine whether resolving the state-law claim would require interpretation of the terms of the collective bargaining agreement.  If so, the claim is preempted.  Second, courts must ascertain whether the rights claimed by the plaintiff were created by the collective bargaining agreement, or instead by state law.  If the rights were created by the collective bargaining agreement, the claim is preempted.  In short, if a state-law claim fails either of these two requirements, it is preempted by § 301.

Id. at 906 (citing DeCoe v. GMC, 32 F.3d 212, 216-17 (6th Cir. 1994)).  In sum, therefore, § 301 preempts a state law claim if resolving the claim requires interpretation of a collective bargaining agreement provision or if the collective bargaining agreement created the right claimed by the plaintiff.

In removing the case to this Court, the Defendants asserted that the Court had jurisdiction over the Plaintiff's claims for the following reasons:  (1) three of the assault/battery claims (negligent retention of employee, failure to properly supervise/administer and negligence) are based upon duties that exist, if at all, pursuant to the parties' collective bargaining agreement, and the interpretation of such agreements has been completely preempted by § 301 of the LMRA; and (2)

6

the Court has the ability to exercise supplemental jurisdiction over the remaining state law claims. Doc. #1. In his Report and Recommendations, the Magistrate Judge agrees with the Defendants, as to § 301 preempting the assault/battery claims, but also determines that § 301 preempts the discrimination claims. Specifically, the Magistrate Judge concludes that the Court will need to interpret certain provisions in the collective bargaining agreement, in order to resolve certain of the Plaintiff's claims (some discrimination claims, some assault/battery claims), to wit:

- Assignment of work provisions, in order to address claim that YRC diverted work from Lauderdale.

- Drug testing provisions, in order to address claim that YRC subjected Lauderdale and other African Americans to a high incidence of drug testing.

- Provisions pertaining to the right to be assigned work, to address Lauderdale's claim that he received discriminatory work assignments.

- Provision prohibiting assignment of employees to dangerous work conditions, in order to address contention that YRC subjected Lauderdale to the dangerous condition of working in proximity with or under the supervision of Sandman.

Doc. #17 at 5-6. With regard to the first three of these conclusions (all of which pertain to the discrimination claims), the Court is in agreement. The Court will need to interpret the collective bargaining agreement in order to determine whether YRC diverted work from Lauderdale in contravention of the agreement, whether YRC subjected him to a higher incidence of drug testing than that stipulated by the

7

agreement and whether Lauderdale received discriminatory work assignments, in contrast to the agreement's provisions governing the same. Thus, the resolution of the discrimination claims requires the interpretation of the terms of the collective bargaining agreement.

In contrast, however, the Court does not concur with the conclusion pertaining to the dangerous work conditions and Sandman's alleged assault and battery. In his Complaint, the Plaintiff has not relied on any contractual right or duty to support his assault/battery claims and has specifically indicated in his memoranda that he does not intend to rely on the same, but will rely only on common law.[5] Doc. #14 at 4-5; Doc. #19 at 4. Further, such claims may be grounded in Ohio common law, without the necessity of referring to a contract. E.g., Federal Steel & Wire Corp. v. Ruhlin Constr. Co., 45 Ohio St. 3d 171, 173, 543 N.E.2d 769 (1989) (noting that a duty to control the conduct of a third person by preventing him or her from causing harm to another exists when there is "a special relationship between the actor and the third person[,] which gives rise to a duty to control, or between the actor and another which gives the other the right to protection").[6] Given that the Court does not need to interpret any part of the

---

[5]The Court agrees with the Defendants that Sandman's position as a non-union member is not relevant to the present claims (in contrast to the Plaintiff's argument regarding the same). Doc. #19 at 4; Doc. #20 at 2.

[6]It goes without saying that should the Court remand the assault/battery claims to state court, the Plaintiff will be precluded from basing these claims on any rights or duties established by the collective bargaining agreement, given the

collective bargaining agreement to resolve the assault/battery claims and given that the Plaintiff is basing his assault/battery claims on common law, rather than on a provision of the collective bargaining agreement, said claims are not preempted by § 301.

### C. Legal Analysis of Supplemental Jurisdiction Question

This Court has supplemental jurisdiction over state law claims, if such claims form "part of the same case or controversy" as the federal claim(s). 28 U.S.C. § 1367(a); see also Harper v. AutoAlliance Int'l, Inc., 392 F.3d 195, 209 (6th Cir. 2004). Further, "[c]laims form part of the same case or controversy when they 'derive from a common nucleus of operative facts.'" Harper, 392 F.3d at 209 (6th Cir. 2004) (quoting Ahearn v. Charter Township of Bloomfield, 100 F.3d 451, 454-55 (6th Cir. 1996)); see also Exxon Mobil Corp. v. Allapattah Servs., 545 U.S. 546, 588, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005) (citing, with favor the "common nucleus" test first enunciated in Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)). In the present case, the Magistrate Judge concluded that all of the claims made against the Defendants form part of the same case or controversy, given that the Plaintiff incorporated all of the Complaint's factual allegations into each of his claims for relief and that all of the claims arise out of the Plaintiff's employment relationship with the

---

representations presently made by the Plaintiff and relied on by this Court.

Defendants. Doc. #17 at 7.  The Court respectfully disagrees.

First, as the Plaintiff points out, a plaintiff should not be penalized, in the context of remand considerations, for using the pleading technique of paragraph incorporation.  In other words, the mere fact that the Plaintiff incorporated the preceding paragraphs of the Complaint into each of his claims is not alone sufficient to indicate that all of the claims in the Complaint derive from a common nucleus of operative facts.  Further, the mere fact that all of the allegations pertain generally to the Plaintiff's employment does not indicate that all of the claims in the Complaint form part of the same case or controversy, unless the allegations otherwise derive from a common nucleus of operative facts.  In this case, the Defendants provide no explanation as to how the allegations pertaining to the Defendants' discriminatory and retaliatory conduct (e.g., discriminatory work assignments and drug testing) are connected to Sandman's alleged assault/battery or YRC's alleged negligent conduct regarding the assault/battery (e.g., failure to protect Lauderdale from the foreseeable harm caused by Sandman).  Other than the two distinct sets of allegations having the same parties and both occurring in the workplace, the parties have presented no facts to indicate that the allegations are in any way related.  Therefore, given that the assault/battery allegations and the discrimination allegations do not derive from a common nucleus of operative facts, the Court may not exercise supplemental jurisdiction over the assault/battery claims.

Therefore, the Court ADOPTS the Magistrate Judge's Report and Recommendations (Doc. #17), wherein he recommends OVERRULING the Plaintiff's Motion to Remand (Doc. #14) the discrimination claims and OVERRULES the Plaintiff's objections thereto (Doc. #19).  However, the Court REJECTS the Magistrate Judge's Report and Recommendations (Doc. #17), wherein he recommends OVERRULING the Plaintiff's Motion to Remand (Doc. #14) the assault/battery claims and SUSTAINS the Plaintiff's objections thereto (Doc. #19).

D.  Intentional/Negligent Infliction of Emotional Distress

Along with the discrimination and assault/battery claims, the Plaintiff also alleges that the Defendants are liable for intentional/negligent infliction of emotional distress, with regard to the "acts and omissions as described in this Complaint." Doc. #4 ¶¶ 62-69.  Thus, the Plaintiff purports to tie his infliction of emotional distress claim to the conduct of the Defendants both as to the discrimination allegations and as to the assault/battery allegations.

The Sixth Circuit has held that § 301 preempts a plaintiff's intentional infliction of emotional distress claim when reference must be made to the collective bargaining agreement in order to determine whether the defendant is liable for the same. DeCoe v. GMC, 32 F.3d 212, 220 (6th Cir. 1994) (citing Polk v. Yellow Freight System, Inc., 801 F.2d 190, 196 (6th Cir. 1986)).  Given that the Court has subject matter jurisdiction over the discrimination claims and it may be likely to

reference the collective bargaining agreement in order to determine if the Defendants are liable for the infliction of emotional distress claim as it relates to those same allegations, the Court will retain supplemental jurisdiction over the same.  On the other hand, since the Court does not have subject matter or supplemental jurisdiction over the assault/battery claims and there is no indication that it may need to reference the collective bargaining agreement in order to determine if the Defendants are liable for the infliction of emotional distress claim, as it relates to those same allegations, it will not retain supplemental jurisdiction over the same.

Therefore, the Court ADOPTS the Magistrate Judge's Report and Recommendations (Doc. #17), wherein he recommends OVERRULING the Plaintiff's Motion to Remand (Doc. #14) the part of the infliction of emotional distress claim that pertains to the allegations related to the discrimination claims and OVERRULES the Plaintiff's objections thereto (Doc. #19).  However, the Court REJECTS the Magistrate Judge's Report and Recommendations (Doc. #17), wherein he recommends OVERRULING the Plaintiff's Motion to Remand (Doc. #14) the part of the infliction of emotional distress claim that pertains to the allegations related to the assault/battery claims and SUSTAINS the Plaintiff's objections thereto (Doc. #19).

III.    Conclusion

As to the discrimination claims, the Court ADOPTS the Magistrate Judge's Report and Recommendations (Doc. #17), wherein he recommends OVERRULING the Plaintiff's Motion to Remand (Doc. #14) the discrimination claims and OVERRULES the Plaintiff's objections thereto (Doc. #19).

As to the assault/battery claims, the Court REJECTS the Magistrate Judge's Report and Recommendations (Doc. #17), wherein he recommends OVERRULING the Plaintiff's Motion to Remand (Doc. #14) the assault/battery claims and SUSTAINS the Plaintiff's objections thereto (Doc. #19).

As to the infliction of emotional distress claims, the Court ADOPTS the Magistrate Judge's Report and Recommendations (Doc. #17), wherein he recommends OVERRULING the Plaintiff's Motion to Remand (Doc. #14) the part of the infliction of emotional distress claim that pertains to the allegations related to the discrimination claims and OVERRULES the Plaintiff's objections thereto (Doc. #19); and, the Court REJECTS the Magistrate Judge's Report and Recommendations (Doc. #17), wherein he recommends OVERRULING the Plaintiff's Motion to Remand (Doc. #14) the part of the infliction of emotional distress claim that pertains to the allegations related to the assault/battery claims and SUSTAINS the Plaintiff's objections thereto (Doc. #19).

In sum, therefore, the Court retains jurisdiction over the discrimination claims and related infliction of emotional distress claim (failure to accommodate (Count I);

race discrimination (Count II); retaliation (Count VII); and that part of the infliction of emotional distress claim that pertains to the allegations related to the discrimination claims (Count VIII)), but remands the assault/battery claims and related infliction of emotional distress claim (assault/battery (Count III); negligent retention of Sandman (Count IV); failure to properly supervise (Count V); negligence, with regard to Sandman (Count VI); respondeat superior/ratification as a means for holding YRC liable for Sandman's conduct (Count IX); and that part of the infliction of emotional distress claim that pertains to the allegations related to the assault/battery claims (Count VIII)).

June 10, 2010

                                                /s/ Walter Herbert Rice
                                                WALTER HERBERT RICE, JUDGE
                                                UNITED STATES DISTRICT COURT

Copies to:
Counsel of recordok